IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

**SHERVIS RAMAR SMITH,**       )
                               )
        Plaintiff,        )
                               )
  v.                           )     **Case No. 13-2247-RDR**
                               )
**SWIFT TRANSPORTATION, CO., INC.,** )
                               )
        Defendant.        )

## MEMORANDUM AND ORDER

This matter is presently before the court upon defendant's motion to compel arbitration and stay proceedings and/or dismiss case for improper venue or, in the alternative, for a more definite statement. Plaintiff has not filed a timely response to this motion. The court is now prepared to rule.

I.

Plaintiff, proceeding pro se, filed this action on May 23, 2013. He later filed an amended complaint on July 11, 2013. The amended complaint is 120 pages. It consists of an "employment discrimination complaint" form provided by the court, some handwritten pages, and many documents related to plaintiff's employment with the defendant. Plaintiff is apparently seeking to pursue an action under Title VII of the Civil Rights Act 0f 1964, 42 U.S.C. § 2000e et seq. The named defendant is Swift Transportation. In the form provided by the court, plaintiff indicates that the "discrimination" occurred from October 2010 to May 2013. He has further indicated that the nature of the case is "mistaken identity." He suggests that he has been

subjected to "sexual harassment and defamation of character." In the section requesting the essential facts of his claim, he has stated:

> Ramona Robertson went out of her way to help me obtain my job at SWIFT Transportation under the impression I was my older brother Anthony Smith, who's in the entertainment business around the Metro Area. Every (sic) since she learn (sic) I wasn't him, I (sic) been put threw (sic) hell! From her and co-workers labeling me as a St. Thug and such. Not only that; she turn (sic) out to be related to my sons mother; now Ramona has slandered my name threwout (sic) her co-workers.

In an attached charge of discrimination filed with the Kansas Human Rights Commission on April 24, 2013, plaintiff indicated that he was rehired on or about September 12, 2012, and he currently works as an owner/operator. He states that during his employment he was subjected to adverse term and conditions including but not limited to being addressed by managers as a "street thug" and "gang member." He notes that "generally" his managers do not treat him with respect. He contends that the actions of Swift Transportation were taken because of his race, black, and his sex, male.

The other documents before the court indicate that plaintiff was hired by Swift on October 13, 2010 as a driver. He was terminated on April 12, 2011. He was later rehired. On December 4, 2012, plaintiff entered into a Contractor Agreement with Swift, thus becoming an owner-operator truck driver. In the agreement, the parties agreed to "conclusive and binding" arbitration of "[a]ll disputes arising under, arising out of or relating to this Agreement.

2

. ., and any disputes arising out of or relating to the relationship created by this Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations. . .in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act." The agreement also contained a forum selection clause which stated that "[t]he parties agree that any legal proceedings between the parties arising under, arising out of, or relating to the relationship created by this Agreement, including arbitration proceedings discussed above, shall be filed and/or maintained in Phoenix, Arizona or the nearest location in Arizona where such proceedings can be maintained. The parties specifically waive any defense as to personal jurisdiction in any federal or state court in Arizona." Plaintiff's position as an owner-operator truck driver was later terminated by Swift.

## II.

In its motion, Swift contends that the court should (1) compel arbitration; (2) alternatively dismiss for improper venue; or (3) alternatively grant a more definite statement. Swift contends initially that this matter should be stayed and arbitration compelled because claims asserted in the amended complaint relate directly to the relationship created by the December 4, 2010 Contractor Agreement.

The FAA provides that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The purpose of the Act is 'to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate.'" Hill v. Ricoh Americas Corp., 603 F.3d 766, 771 (10th Cir. 2010)(quoting Glass v. Kidder Peabody & Co., Inc., 114 F.3d 446, 451 (4th Cir. 1997)). The FAA states a "liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). The FAA obliges courts to stay litigation on matters that the parties have agreed to arbitrate. 9 U.S.C. § 3; Hill, 603 F.3d at 771.

The court is persuaded that all of plaintiff's claims that arise after December 4, 2012 are subject to arbitration. The arbitration provision in the Contractor Agreement is a valid and enforceable provision. Plaintiff was provided with the agreement when he began as an owner-operator truck driver on December 4, 2012. He voluntarily and knowingly signed it. Therefore, the court must enforce it and must compel arbitration for all claims that arose after December 4, 2012. The court shall stay litigation of these claims until resolution of them in arbitration.

The court notes, however, that plaintiff has asserted claims that arise prior to December 4, 2012. These claims are difficult to discern, but Swift recognizes that plaintiff is also attempting to assert such claims. Swift contends that plaintiff's claims arising prior to December 4, 2012 are also subject to arbitration. Swift argues that the language of the arbitration clause includes those claims that arose before the agreement was signed. Swift relies upon Zink v. Merrill Lynch, Pierce, Fenner & Smith, 13 F.3d 330, 332 (10th Cir. 1993) for support.

The court is not persuaded at this time that these claims are subject to arbitration. In Zink, the plaintiff purchased a some bonds in 1980. A financial account was opened for him and thereafter managed continuously by the defendant. Zink, 13 F.3d at 331. Two years after the bond purchase, without any cessation in the business relationship, the parties executed a formal account agreement which included an arbitration clause that provided, in part, as follows: "It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration. . . ." Id. The following year, the plaintiff instituted a civil action in federal court alleging various claims concerning the initial bond purchase. Id.

The Tenth Circuit determined that the arbitration agreement covered both the plaintiff's financial account and any dispute

5

stemming from the plaintiff's business dealings with the defendant, and then held that the agreement was "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement." Id. at 332.

The court does not find Zink applies here. Here, unlike in Zink, the parties have not agreed to specific contract language encompassing prior dealings. The language of the Contractor Agreement appears only to include those claims arising in connection with that agreement. The nature of the plaintiff's status with Swift changed when he signed the Contractor Agreement. The court finds no basis for the argument that plaintiff's claims arising prior to December 4, 2012 are within the arbitration provision of the Contractor Agreement.

## III.

Swift has also argued, in the alternative, that this action should be dismissed for improper venue. This argument is based on the forum selection clause contained in the Contractor Agreement. Swift contends that this action should have been filed in Arizona.

The court has compelled plaintiff to seek arbitration on the claims arising after December 4, 2012, and stayed this litigation pending resolution of the arbitration. The court will deny this motion as moot at the present time. Swift may raise the issue at

a later time if it becomes relevant. The court has also determined that the other claims raised by the plaintiff precede the date of the Contractor Agreement. For the reasons previously stated, these claims are not subject to the terms of the Contractor Agreement and therefore not subject to the forum selection clause.

IV.

Finally, the court shall consider Swift's motion for a more definite statement. Swift asserts that it is unclear what type of discrimination that plaintiff is alleging in this action.

Fed.R.Civ.P. 12(e) provides that, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. . . ." Whether to grant or deny such a motion lies within the sound discretion of the court. Bradley v. Val-Mejias, 2001 WL 1155292, at *1 (D. Kan. April 18, 2001)(citing Graham v. Prudential Home Mortgage Co., 186 F.R.D. 651, 653 (D.Kan.1999)). Although such motions are generally disfavored, they should be granted "when a party is unable to determine the issues requiring a response. . .[T]he standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission." Shaffer v. Eden, 209 F.R.D. 460, 464 (D.Kan.2002)(citations omitted).

The court agrees with Swift that framing a response to the plaintiff's complaint would be extremely difficult. The court has made some effort to identify the claims asserted by the plaintiff in the prior discussion of the plaintiff's complaints and the attachments. But, the claims are difficult to discern. The court understands that plaintiff is proceeding pro se, but the filings of pro se parties are subject to the Federal Rules of Civil Procedure. Williamson v. Owners Resort & Exch., 90 Fed. Appx. 342, 345 (10th Cir. 2004). The Federal Rules of Civil Procedure require complaints to be comprehensible and provide a "'short and plain' statement of the claims sufficient to give the defendants reasonable and fair notice of the basis of the claims." Id.; Fed.R.Civ.P. 8(a)(2).

The court shall require plaintiff to file an amended complaint within fourteen (14) days of the date of this order. The complaint should be a short and plain statement of what he alleges happened and which statutes he claims were violated. In doing so, plaintiff shall list the specific statutory section, the specific action that he believes constitutes a violation of it, and the date on which the action allegedly occurred. Plaintiff should focus on the claims that occurred prior to December 4, 2012.

**IT IS THEREFORE ORDERED** that defendant's motion to compel arbitration (Doc. # 23) be hereby granted in part and denied in part. This action is stayed pending resolution of the arbitration

proceedings for all claims asserted by plaintiff after December 4, 2012.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss case for improper venue (Doc. # 23) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion for a more definite statement (Doc. # 23) be hereby granted in part. Plaintiff shall file an amended complaint in compliance with the guidelines stated in this memorandum and order within fourteen (14) days of the date of this order.

**IT IS SO ORDERED.**

Dated this 7th day of October, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge